You may proceed. May it please the Court, Bill Davis for the appellants. Like most states, Texas limits dental specialty advertising to the specialties recognized by the American Dental Association. It has done so since 1971, limiting the specialist term of art to the ADA's stringent criteria. The plaintiff's complaint really here is that the ADA hasn't recognized their specialties, but that does not make the Texas rule and its numerous counterparts in other states unconstitutional. I'd like to start, if I could, with the First Amendment claim and the first prong of the central Hudson test. The question under that prong is whether the proposed speech is inherently misleading. That category includes proposed speech that is devoid of intrinsic meaning. The proposed speech fits into that category here because Rule 108.54 is the only thing that gives specialist in dental advertising in Texas any reliable meaning. We know that from the plaintiff's own deposition testimony. The plaintiffs testified to a broad range of what specialist could mean in their view or in the view of any advertising dentist, and that's very different from the criteria that the ADA requires for specialty status. This is a point that the Missouri Supreme Court made in the Parmley v. Missouri Dental Board case. The regulations were similar in that they required ADA specialty status to advertise as a specialist, and the Court said that without that link, specialist would have no intrinsic meaning. It would be, in that Court's words, subject to the whim of the users, meaning a dentist could use that term in advertising however he thought appropriate. And we know again from the deposition testimony that that could include even a dentist who simply feels subjectively that he excels in a certain area. What is the substantial government interest advanced by the rule? We have asserted on page 23 of our brief more than a half dozen substantial interests. The plaintiffs have challenged only two of those, and one of them is making sure that there are uniform criteria for specialty certification. That was the first bullet point. That's unchallenged. Another is enabling the public to distinguish between specialists and general dentists and avoiding abuses enabled by the public's comparative lack of knowledge. Doesn't this rule in this context actually not advance that interest because there is no specialist in that category of dentistry, and so the public has no way of differentiating between the more preferred dentist in that area? Well, there are nine categories of ADA specialists, and I'm not sure which specialty Your Honor is referring to, but implant dentistry, just to take an example, is something that an oral surgeon could do. That's an ADA-recognized specialty. It's something that a periodontist could do. And so consumers can look to that specialty term of art, and they have for 45 years in Texas and in many other states, and that's significant because, just to take an illustration, if there's a child who needs emergency dental care, the last thing a parent needs to be worried about is what specialist means in a dental advertisement. Counsel, part of that is the nature of this kind of challenge. It seems to me what the district judge determined is that the rule that Texas is using is, at best, at worst, I'm not sure which one, is overbroad. It's not that you can't regulate in some way these specialties not covered by the rule, but the way you did regulate it is a violation of the First Amendment and whatever else. Just looking at the first prong, Judge Elrod asked you about the second, but it seems to me the varying, I mean, one of the points that I understand you're making, why you're making it, is a specialist has no particular firm meaning. The plaintiff's own witnesses didn't have a firm handle on what that meant. But it seems to me whatever it means, within the range that those plaintiff's witnesses were talking about, it is giving useful information to the public that these people are either more experienced, they've been certified in some way, other categories, but at least they are more on top of whatever that particular area of dentistry is than others, and you can come up with a regulation that requires certain levels of training or certification or whatever else. It's not that you can't regulate it. It's that you're overregulating it now. But I don't know if you have any response to my rambling comment, but that's my sense of this case, is that your regulation is too broad. You can regulate, but you're not doing it correctly. And what this injunction is allowing is in these four categories of specialty, I don't know if you could hear the quotes around my use of the word, in those four categories, where you cannot stop at least some useful information from going to the public without a better justification. Well, Judge Southwood, I think your question really goes to two prongs, the first prong and the fourth prong of the central Hudson test. One of the things that the Parmley court said was to permit this type of information to flow freely, that is, unregulated specialist advertisements, would actually obscure useful information from the public because it would bury true specialist advertisements in a sea of whatever the dentist thought was appropriate. And so the consumer wouldn't be able to trust that. Let me ask you, what's your understanding of this injunction? You have three dentists and four associations, or the reverse. The three dentists can advertise in their specialty as a result of the injunction, correct? I believe there are five individual dentists, but yes. As far as the groups are concerned, what is the effect on them? The injunction isn't especially clear. All we know from it is that it enjoins enforcement of the rule as to these plaintiffs under the First Amendment theory. But it doesn't, has it been argued in this case that that allows anyone who is a member of one of those associations to advertise in their specialty who is not a named plaintiff? No, I don't think that would be a permissible reading of the injunction, for one thing because in the live complaint, the plaintiffs in identifying their organizations and their membership note that even though the individual plaintiffs have achieved certain credentials, most of the members, for instance, of the implant dentistry group haven't achieved those same credentials. And so I don't think it could be read that way. And there was no suggestion in the district court's order that the plaintiffs have shown that facial relief would be appropriate because there's no circumstance in which the rule could be validly applied. And, in fact, the plaintiffs, I think, would agree that the rule could be validly applied to someone who has absolutely no training as a specialist. Why isn't that the right outcome, that these particular dentists who do satisfy more extraordinary training in a specialty that is not identified in the ADA, why isn't this the right outcome so that it doesn't invalidate the rule but it allows special dentists to be able to not have their rights infringed upon a showing of that specialization? And then the public has that additional information which can help them differentiate in this area of specialization that the ADA doesn't recognize. Gell-Rudd, I think the answer is because the standards are not the same. The ADA's standards require 2 to 3 years of residency with hands-on training. And, again, I would point to the plaintiff's deposition testimony. They're saying, some of them are saying, that it requires a lot of education and testing and certification. But others are saying, actually, you don't really have to take a test if you've been doing it a long time. Or if you just excel in an area, you can be a specialist. Are there certain plaintiffs that you think are not specialists? No, we haven't attacked it on that ground, but it goes to the point of lack of intrinsic meaning because once that link is broken from the ADA's specialty criteria, there will be any number of plaintiffs. So let's say that these plaintiffs obtain, as applied relief, there will be plenty of other plaintiffs in the future saying, well, I'm a specialist too. And you can litigate against those people on an as-applied basis. But the question is . . . I mean, are there really going to be such floodgates that the state can't manage that? The question is whether this line-drawing exercise is constitutional. Any line-drawing exercise will result in some . . . And in connection with that, that would go to whether or not the advertising is misleading. That's what we're looking at under Central Hudson. That's right, Judge Graves. And in connection with whether or not it's misleading, you're talking about what it may lead a consumer to believe about that particular practitioner's specialty based on the advertising. Right? That's right. And along those lines, did you offer any empirical evidence or data that would suggest that such an ad would be misleading? What do you offer in support of your contention? We don't have, in the words of the en banc court, this Court in Dunnegan, empirical scientific evidence. But in footnote 8 of that decision, this Court said that's not required. And this goes to the third prong of Central Hudson, the advancement prong. The Supreme Court in Florida Bar v. Wentford explained that the government has a lot of leeway here and can rely solely on history, consensus, and common sense. Again, footnote 8 of Dunnegan supports that point. So let me start with common sense. It is common sense that a rule that sets uniform criteria advances the State's interest in setting uniform criteria. Again, that's an unchallenged substantial interest, the first bullet point on page 23 of the State's brief. And the plaintiff's own deposition testimony, again, supports that. Plaintiffs Buck and Huber testified that there has to be some organization or entity responsible for certifying specialists. And it only makes sense that Texas has looked to the ADA, as most of the other States have done, and limited specialty advertising to the ADA-recognized specialties. This goes back... On that point, there's a back-and-forth in your briefing as to the number of States. And what is your best assessment of States who regulate in very close to the same way Texas does? If it's not your biggest possible number, give me what they're going to tell me is the right way to look at this or tell me why that's incorrect. Sure. So in the briefing we had non-exhaustive lists. I think we got up to, if you combine our opening brief and the amicus brief, I think the count is 34 States that we cited that limit specialty advertising to the ADA-recognized specialties. There, I think, in preparing for argument, we found a couple of more. So I think the total comes to 36. If we look to other cases that have applied the consensus prong, one case that we cite in the brief is Philonga v. State Bar of Georgia. And in that case, the Court identified 31 States that followed an ABA model rule, but only 10 States that had identical or, in that Court's words, a similar rule. And so here we have many more States than that. And one of the other points that the Philonga Court made, and this is the Eleventh Circuit, was that with a rule that goes back, in that case, 35 years, here we have 45 years, it's not surprising that there won't be a lot of evidence about what went into the rule. And that only makes sense in this context because otherwise plaintiffs could just look for old rules and start picking them off under First Amendment theories. And that's not how the test is set up. Well, counsel, it seems to me that what Central Hudson requires us to do is not decide what is the manner that most fits within the State's argument that you're giving us now about a uniform way of all specialties meeting a certain standard. That can be the gold standard. It seems to me, so long as it's not misleading in the other categories of Central Hudson, that individuals are entitled to advertise commercial speech in ways that fit their factual situation. And it certainly has been recognized in other States when, in other cases, the State can require some sort of screening certification, not at the level of the ADA perhaps, require the use of disclaimers. It's not what you want, but it's something you could impose. It seems to be consistent with Central Hudson if we agree with the district court, and we may not. Judge Southwood, this goes to the fourth problem of Central Hudson. And what the Supreme Court has said there in the Board of Trustees v. Fox case is that the States have a lot of leeway here. And, yes, screening is one option. Disclaimer is another option. But in the AAPM case, American Academy of Pain Management case from the Ninth Circuit, the Court there said that another way to not substantially burden protected speech, and that's a paraphrase from the Fox case, is to allow a substantial amount of other speech in the same area. And here that is what Rules 108.55 and .56 do. They allow people to advertise the services they provide, the credentials they've earned, including in the plaintiff's organizations. They allow them to name their practices in ways that show consumers what they practice. I see my time has expired. Consider yourself still answering my question. I'm sorry? Consider yourself still answering my question. Oh, thank you, Your Honor. That's really near the end of my answer. It's that the State has allowed a substantial amount of speech, and under the AAPM court's analysis, that's all that's required under this prong. I have two questions. First one is we've been talking about Central Hudson, assuming that that is the standard. How do we know that the Reed v. Town of Gilbert standard isn't the correct standard to be applied in this context? And if we were to apply the Reed v. Town of Gilbert standard, do you concede that you lose? So Reed v. Town of Gilbert, I believe, was not even a commercial speech case and didn't mention Central Hudson. And I think if there would be as dramatic a change as to overhaul the Central Hudson framework for commercial speech, we would know that from the Supreme Court. And the first opinion from the Court this term was a per curiam decision in Boss v. Oklahoma reminding courts that they have to leave it to the Supreme Court to change the law. So I don't think there's any valid argument that anything other than Central Hudson applies here, as several other circuits have concluded after Reed. If we were in strict scrutiny, I'm not prepared for that because strict scrutiny doesn't apply. Of course, the standards would be harder. Intermediate scrutiny? Intermediate scrutiny under Central Hudson is what applies, yes. Do you lose under strict scrutiny? We would have to show a compelling reason and a perfect fit. And I think it would be a much harder case. I'm not going to concede we lose because I haven't fully investigated that line because strict scrutiny just doesn't apply. Well, I mean, the opposing counsel, didn't they mention this? It's not like it's a surprising question to be asked. But, okay, the other question that I have is, do you agree that you bear the burden of showing that it's misleading? Yes. And what in the record points to that? On the first prong, the plaintiff's deposition testimony. On the second prong, that's uncontested. We have substantial interest. On the third prong, history, consensus, and common sense. On the fourth prong, rules 108.55 and 108.56. That's what you were answering earlier, and it's the same exact thing. Yes, Your Honor. Okay. Thank you. Thank you. You've saved time for rebuttal. May it please the Court, Renee Hicks for the American Academy of Implant Dentistry and the eight other plaintiffs in the case. I want to address first the Central Hudson Intermediate Scrutiny Standard. Later, I want to get to Judge Elrod's question about Town of Gilbert, and I think Sorrell, the 2011 Supreme Court decision, has to be combined with that in an analysis about strict scrutiny. But first, Central Hudson. Central Hudson, as we all know, I think, it's kind of fixed in our heads, has four elements to it. First, it puts the burden on the state to meet every element. The burden is not on the plaintiffs. We have a prohibition here, not a restriction that involves a disclaimer or anything like that. This is an outright prohibition on First Amendment speech that historically has been accorded the term commercial speech. Central Hudson applies for sure in that, no matter whether Town of Gilbert does or not. The first element is, under Central Hudson, in all the cases that have applied, is the speech, speech that's protected by the First Amendment, and to test that, you have to say, is it lawful speech, and is it not misleading? Those are the two tests, the first factor, that Central Hudson mentioned. There's no question that advertising as a specialist in implant dentistry, orophacial pain, oral medicine, and dental anesthesiology is lawful. Texas is what's called a plenary state. That is, when you get your license to practice dentistry, you can practice in any area. So it's lawful to practice in the field of implantology, for instance, if you're a dentist licensed in Texas. And so advertising that you specialize in that area, and that's the area you are in, is perfectly legal. Texas does not certify. The dental board does not have the authority to certify specialties. So it is perfectly appropriate, put aside the advertisement question for a second, it's perfectly appropriate for somebody to practice as a specialist in implantology in Texas. They have said, you can't advertise that you do that. That is not unlawful. So we meet that part of the first test. Advertising that you are a specialist in implantology is not advertising unlawful activity. You can say you practice in implantology, but you can't use the term specialist? That's what they say, yes. You can advertise 108.56, I believe it is, says you can advertise maybe 55. So in the back of the airplane magazine, when they've got the pictures of the people who do the one-day implants, as long as they don't use the word specialist, the state's not going to come after you. But you believe that you should be able to put the word specialist. Yes, I think there's no... And it's not unlawful to do it. Do you know how many dentists there are who would solely perform one of these non-recognized specialties, implants? In Texas? Solely. That's all they do is implants. I don't know how many. We have declarations from the organizational plaintiffs and from each of the individual plaintiffs. The organizational plaintiffs exhibits 27, 28, 29, and I think 30. I know 27, 28, and 29. I left off the other one. I copied them. I don't know if it's 30 or 26. But they say in paragraph 4, I think, of each of the declarations, how many people that are members of the organization are, for instance, diplomats under the certifying board for their particular specialty in Texas, we specifically identify. My question was a little bit different. Okay. My question was, do you know how many dentists there are who would solely perform one of the non-recognized specialties? And otherwise, is there somebody who does implants, only does implants, doesn't do anything else but implants, and wants to be able to advertise that I do these implants and that that's my specialty but can't because of the Texas Board of Dental Examiners? I don't know how many in the whole state of Texas. Each of our plaintiffs, individual plaintiffs, Dr. Huber, Dr. Wright, Dr. Heaton, and Dr. Buck, and the other Dr. Elliott, they all say they practice exclusively in their fields. So implantology is Dr. Buck. He doesn't do anything but implantology. I just don't know how many in the whole state. So is it going to be a deluge of these one-off cases to the state? They can't handle looking at these people individually? It's sort of my question. Okay. If we don't know, I mean, are there so many people that are trying to hold themselves out that they're going to have to be having ten people full-time evaluate whether or not these people are really specialists in this? That's not the only choice it's left to say, but let me focus for a second on this relief question. I really want to get through my other pieces, but this is important because this is the relief piece. Judge Sparks, the district judge, did not do an as-applied injunction as to only these people. The only time the phrase as-applied is mentioned is early on when he's reciting what our challenges are. He says we have facial and as-applied challenges. And then when he gets down and issues the injunction, he says this violates Rule 108.54, is an unconstitutional restriction on plaintiff's First Amendment right to free commercial speech. It is. He facially enjoined the statute. He doesn't say he did it either way. That is, it doesn't — it isn't clear which way he invalidated it, but the hellers should have been. He enjoined the State from enforcing this against the plaintiffs. That's not a facial injunction. Your Honor, I disagree. He said that it's ordered that defendants are enjoined from enforcing the code to the extent it prohibits plaintiffs, that's your point, from advertising as specialists. He said, he declared that the Rule 108.4 is an unconstitutional restriction on plaintiff's First Amendment right to free speech, free commercial speech. What you're saying is the reasoning would apply to others, but it seems to me the injunction applies to the plaintiffs, applies to the State acting against the plaintiffs. The injunction can only apply to the plaintiffs, but the declaratory relief applies to invalidate the regulation across the board. Well, you know, the people have to come and sue for that. I don't agree, Your Honor. We've had a lot of, in lots of State laws and injunctions, and we've had a lot of experience with this in the past two or three years, and this is, there's, it doesn't enjoin the law as to all people at all times. It declares it unconstitutional, I believe, at all times. Under the First Amendment, they cannot enforce this regulation against anybody. They aren't enjoined from it. If they do it, they'll be subject to monetary damages. This puts you in a much more difficult position than you would be here otherwise. Your Honor, I don't agree. The Hellerstedt case from the Supreme Court and the Citizens United case from the Supreme Court in 2010, they both addressed this issue of what happens when district judges are not so cautious about whether they say facially invalid as applied invalid. And in Hellerstedt and in Central, I mean in Citizens United in 2010, the Supreme Court said you're being too tightly bound by those categories. In fact, they said it to this Court in Hellerstedt. You're being too tightly bound to those categories. An appellate court can say it's facially invalid even if it was only applied, attacked as applied in the district court. So I don't agree. I think it's invalid. But I want to get past that. I think that's a red herring, frankly, Your Honor. Then why are we talking about it? Because it was dragged across the path and I had to say something about it. Let me go back to the first factor then. The other piece of the first factor is the speech has to not be misleading. Saying you are a specialist in something, implantology, for instance, in Texas, is not inherently misleading. The testimony that they point to of the plaintiffs and the organizational plaintiffs where they're – I think it's primarily the organizational plaintiffs where they are asked in the depositions, well, what do you consider it to be to be a specialist? And they go through – every one of them says essentially the same thing. They say it takes training, experience, education, and a testing regime of some sort to get you there. Every one of them says that. So the core issue of a specialist is clear. It's not inherently misleading. If any – and the Supreme Court in Peel said that. The majority opinion – by the way, this part of Peel is a majority opinion, even though it looks like a plurality opinion because Justice Marshall in his concurrence says he agrees with that part of it. That is the first factor of sinful Hudson. In that, there was an argument that specialist has special meaning. You can't – it doesn't mean anything. And the Supreme Court said, look, the fact that there may be degrees of certainty with respect to the term does not mean it's inherently misleading. It says that on page, I think, 202 or 102 of the U.S. Reports page. That's specifically what it says. It says it's not inherently misleading. It's potentially misleading. And we agree. Advertising as a specialist in anything is potentially misleading because you don't know. Somebody might just be out of law school for three years, never have done any periodontal work, for instance, and they could be misleading somebody. So it's potentially misleading. So it's okay to regulate it. It's not okay to prohibit it this way. They have to establish that. Can we talk about the law analogy? You get certified. You have to be certified by the Texas Board of Legal Specialization to be called a specialist in the law. That's an analogy we would all understand. Yes. I'm a specialist. And it's specialist. I know you wouldn't guess it from what I'm hearing. And you have to be. And there are some areas that they don't have a specialist exam. And so they, people say, so there's an issue about whether they have to say not certified by the Board of Texas Legal Specialization in the commercial, you know, the commercials. Yes. So how does, how is that different than this rule? It's not because that is not an outright prohibition. This is an outright prohibition. That is a disclaimer rule. That is. Does the 108.55 provide that you can advertise that this is what you do as part of your practice? You can list it as part of what you do. You can list it, but you can't say you're a specialist. You just can't say you're a specialist. Right. No. But you can talk about it in your advertising. But you can't say you're a specialist. And that's a big deal. That is the reason the ADA has insisted that they aren't widening the field beyond the nine they have. They've widened it since 1963. They've added one specialty. And they've rejected all of these. Why is it okay in law, then, but not okay here? It's, it's, it's, I'm not saying, we aren't saying they could never have a disclaimer. This is not a disclaimer case. What you described was historic, historic specialization. But if they do have the certification, you can't hold yourself out as an appellate specialist. If you, and the ones that they do have, you can't hold yourself out as, that's against the, you'd be in disciplinary violation. Well, the easiest answer to that goes to the Central Hudson Burden. That is, we haven't challenged that. We're representing dentists, not lawyers. I don't know if there's a study out there that the State would point to with regard to bar, people in the bar, for instance, that would say, it is misleading. We have established anecdotally. We have established through surveys that it is misleading for them. There is nothing here. They have enacted a ban on certain statements that are true. You can be a specialist in implantology. True statements. They have banned it, and they have the burden under the third factor of proving that there is a base, it directly advances their interest, substantial interest, let's say, in protecting consumers from misleading information. They have to establish it. We don't have to disprove it. And they have nothing. Can a somebody in one of these categories not approved by the ADA advertise that they solely practice in one of these areas? No. That's another problem, Your Honor. 108.55, when they change — this exacerbates the problem of 108.54's restriction to ADA-recognized specialties. 108.55, when they changed the rules with regard to 108 — when they reenacted 108.54, they also modified 108.55. And in there, they said — these are the listing of, I do implant practice, for instance, that Judge Graves mentioned. If you say that, you have to stick in to, say, general dentistry practice, too, even if you don't. Dr. Heaton, for instance, is an anesthesiologist. He's one of the plaintiffs. He only does anesthesiology. He's trained in anesthesiology. He only does it. And they force him to stick in his ad that he does anesthesiology, but he practices general dentistry. My question, though, is whether you could use the wording. It's one thing to have something that is said rapidly at the end of a political ad. I approve this ad. Right. If you have to drop in any ad, general dentistry, whatever the phrasing is, all I'm asking is something that seems to be different. Could one of your five plaintiffs say, I solely work in this area, and then put the State-ordered language in there? I think not. It would be dangerous. I'll put it that way, because — You might have to come to the Fifth Circuit to get it approved. Yes. But you're already doing that. You don't want to come back. No. What I'm looking at is the State's — just a second, Mr. Hicks. What I'm looking at is the State's interest here is not insubstantial. And you have a rigorous certification exam, or I don't know what it is, whatever the ADA requires for each of these nine areas. And what exists here is a range of things dealing with your four organizational plaintiffs, which may or may not have that rigor. I don't know. I don't know if more — maybe this would all be that the ADA ought to recognize more than it does. But what I'm looking at is if, in fact, the speech, the commercial speech that your parties, your clients want to make, is largely permitted by this rule. It's not. I've suggested one way it may be, and you're worried about the risk. But you'd rather strike down the whole rule than see if you could do that. I'm just wondering — all I'm saying is I would not belittle the State's interest here. I'm not saying your interest is — I'm not belittling the State's interest. We have agreed it's a substantial interest to protect consumers. On your question about could you advertise, I solely practice infantology. First thing is, it would look kind of weird to say that and say general dentistry. But the second problem — Put that in smaller letters. The second problem with it is — I didn't hear you. Put that in smaller letters. Well, no. They require it to be the same size font. Okay. Okay. No. They get us pretty carefully. The problem with it is they would also — they say in these other two rules, 108.55 or 56 — I don't remember for sure which one — they say you can't say anything that implies you are a specialist in one of those fields. And if you say I only practice implantology, I would say that rule suggests that you are running afoul of the implying that you were a specialist there. I want to come back. There is nothing wrong under Texas law with being a specialist in implantology or anesthesiology. There is nothing wrong with it. It's perfectly legal. It's — being a specialist is not inherently misleading. So saying you're a specialist in implantology in an advertisement, there's — it meets the first factor easily. They have to then come back on the third factor and say, okay, we have surveys, we have studies, we have anecdotal evidence to show that that creates confusion for consumers, kind of like Your Honor was talking about. They have nothing. So to say that they have met their burden on the third factor here is to eliminate the third factor. There is no case that has ever said it is okay to have no basis in fact, anecdote, surveys, any evidence. And that's the problem Judge Sparks had with this. They have no evidence that this situation that we're saying should obtain, if we're successful in striking down 108.54, would create any problem at all for harm to consumers or confusion for consumers. None. Now, in the State Bar situation that Judge Elrod mentioned, I don't know whether they have studies. I don't follow it closely enough. I'm board certified, so I want to keep the other people out from advertising that they're specialists. But I don't know. So I can't address that. This is a proof issue, and they didn't even remotely try. Now, on the other issues, well, couldn't — this goes kind of to the relief. The fourth element of the central Hudson test requires that even if they meet the others and they don't meet the third one at all, they don't even come close, but if they meet the others, they have to show that it's narrowly tailored to fit the situation, the problem. And the way they typically could do that would say, well, we have a disclaimer here. Let me just say one. So not recognized — board specialists in implantology, not recognized by the ADA. That might be a disclaimer they might be able to establish. We aren't conceding they could, but they might be able to do that. That's narrow tailoring. They might go up and be able — and Judge Sparks mentioned that. He also mentioned they might be able to go back and say, for instance, we're going to have mutual standards for boards that certify. There's something called the American Board of Dental Specialties, which is essentially these four people, these four organizations. They can have mutual standards that test whether there's a board out there. They didn't do that. That's the problem. We aren't trying to solve forevermore the regulatory situation with regard to specialist advertising for dentists in Texas. We're just saying this rule is invalid. This rule is invalid for anyone in Texas. Now, and I think the Central — I'm sorry, I keep calling it Central United. Citizens United and Hellerstedt decisions both make it clear that this Court can say, as I think Judge Sparks said in his declaratory judgment, that this is an invalid rule under the First Amendment. That's not what he said. He said it's an unconstitutional restriction on plaintiffs' First Amendment right. And then in the next paragraph it said it's enjoined from enforcing to the extent it prohibits plaintiffs. I went back and checked this because you, in the middle, did that thing that was sort of perhaps a red herring but not, and that makes me want to ask you about if we disagree with you that he facially — that Judge Sparks facially enjoined this, did you fail to do a cross-appeal? You told us that you're an appellate specialist several times. Were you required to do a cross-appeal, as the State says? And if not, what case says you weren't? Hellerstedt says I don't have to. Citizens United says I don't have to. Where does it say that if the injunction is as applied, you don't have to appeal the — another one of those cases. This is with regard to the declaratory judgment. In Hellerstedt, there was no cross-petition from the people who had made the as-applied challenge. And yet the Supreme Court, Justice Breyer's majority opinion says we can make it facially invalid, so you don't have to cross-appeal. I just think — Well, they actually — no, Justice Breyer said that Judge Yackel made it facially invalid and that that was okay because he was anticipating that the law was unconstitutional. He — they affirmed the district court having made it facially invalid. They did not on their own all of a sudden make it facially invalid in the Supreme Court. I just think that's not the way the law works. And I think — Well, what case says that? I think Citizens United got it right that time, and Hellerstedt both make that clear, that the issue is this Court can look at the rule and say it is invalid, period. That's what those cases say. It is invalid, period. I think it is over-reading the declaratory judgment part. He can only issue an injunction for the plaintiffs themselves. But as for the declaratory judgment part, it is over-reading his statement to say he did it only as applied. Is there any Fifth Circuit authority you can cite for the proposition that you don't have to cross-appeal that proposition? Yes. It's Vance, United. I cited — it's footnote 15 of the Vance decision, I think, in 1987. Okay. Thank you. It's taking me way back. Thank you, Your Honor. Just to follow up briefly on that point, the judgment granted only as applied relief, a cross-appeal would be required because that would be changing the judgment. And the main point here is there's nothing in the district court order that says the plaintiffs met their burden to show that the rule could never validly apply. And so the district court could not have properly granted facial relief. If I could go to the first prong of Central Hudson, we're not arguing that this relates to illegal activity or it's unlawful. It's lawful to practice in all of these areas of dentistry, but that is fundamentally different from practicing as a specialist because by using that specialist term of art, you are telling the public that you have achieved special recognition by the oldest dental organization in the country and the one that the federal government looks to in its regulations cited in our briefs and, again, that most of the states look to. That's different from just practicing as a generalist. I wonder... What do the other states in the circuit do? I'm sorry, the other states? In the circuit. In the Fifth Circuit? Louisiana and Mississippi. Oh, I'm sorry. I'm sorry. I'm sorry. I'm sorry. That's... I'm sorry, Judge O'Rourke. Yes. Louisiana and Mississippi are both among the states that limit dental specialty advertising to the ADA specialties. The Byram case has been cited by the plaintiffs in support of their position, but I think the most important point of that decision appears on page 449. The court says there that the state could have eliminated any constitutional challenge here by not limiting the terms interior design or interior designer, but by allowing designers who satisfy its licensing qualifications to represent themselves as licensed interior designers. That's analogous to what we have here. We're not saying that a dentist can't call him or herself a dentist. We're just saying that they can't use that specialist term that for decades has been reserved for something else. How does the state answer Judge Southwick's hypothetical about the solely? Hold yourself out to solely do the work. Right. So the first prongs of 108.54 regulate the use of the word specialist, but in the final prong it says you can't imply that you specialize. So I think there could be a question for the Board, depending on what the advertisement exactly said, but we know from Rule 108.55 that what you could say is John Smith, general dentist, implants. So looking at the whole purpose of Central Hutchin, which is to allow honest legal information to be given to the public, truthful information given to the public, it seems to me the state certainly has a good interest. The ADA gold standard, if that's what it is, maybe it's not, is one way to draw the line, but if you're going to draw the line there, it seems to me the state has to allow truthful information to get to the public. And I don't think you'd disagree that somebody can solely practice in one of these areas that's not ADA specialty. Why can't the public be? I think the public can be told that. How can they do that under your regime? That's too strong a word, under this regulation. They can do that under Rules 108.55 and 56. So they can, as long as they say general dentist, because they haven't met the specific... Well, we just talked about, you were just answering Judge Alrod's question, they can't say I solely do implants, I solely do one of these other non-specialties. And that's truthful information that would certainly let someone know this is, maybe he's doing it wrong every day, but nonetheless he's learning from doing it. No, what I was trying to say is it's unclear whether that solely language could be construed as implying specialization. I don't know that it could be, but what... It sounds like from what you quoted it probably would be struck down by the agency because it is implying, not implying, you're saying that I'm specializing in this area. I don't know that that's true, Your Honor, because saying that you solely practice one particular area of dentistry isn't saying that you are a specialist. And that is the term that consumers can look to and currently and for the past four decades trust to mean something that has reliable standards behind it. And again, I think the analysis is similar to what the Ninth Circuit engaged in in the AAPM case here, that because dentists can say that they're general dentists but they practice in this area or these two areas or whatever and they have achieved these certifications from or certificates from whatever boards they want to say and they can name their practices in ways that shows consumers what they offer, that's not burdening substantially more speech than necessary. I see my time has expired. Are there dentists that are part of the state, on the state side in this? I'm just curious. Is there an amicus from the other side, for your side, that says keep these restrictions? Do you have an amicus? Yes. I'm trying to remember. Yes, Your Honor. I'm sorry. I read some of this last week and so I'm just trying to remember. Sure. Not at all. There is an amicus brief that was filed on behalf of three groups that represent dentists who are on the ADA's list of the nine specialties and they have pointed out that the reason they trust the ADA's standards is because those are really tough standards and for its members to meet those standards, they have to go through a lot of schooling and certification and that sets them apart. I'm sorry. Is there a motion for leave to file an amicus that was on behalf of some people who would have joined your side that got carried with the case? I believe that's correct, Your Honor. All right. So we need to rule on that. One way or the other. At some point. Yes. Thank you. And you would urge me to grant it. Yes, I would think the motion should be granted. And I don't know whether you were opposed or not, but I can't recall. I believe they were opposed. We opposed it for if it has jurisdiction. Okay. Thank you. We'll take a look at that. Thank you, Your Honors. All right. Thank you.